IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SANDERS COLLECTION INC., | Case No.: 1:24-cv-10045 |
| Plaintiff, | |
| vs. | |
| DBEST PRODUCTS, INC., | JURY TRIAL DEMANDED |
| Defendant | |

**PLAINTIFF SANDERS COLLECTION INC.'S**
**FIRST AMENDED COMPLAINT**

For at least two years, Defendant dbest Products Inc. ("dbest") has engaged in bad-faith patent assertion. Rather than investing in development or commercialization, dbest has asserted patents in bad faith, targeting smaller Amazon sellers by suspending or facilitating the delisting of their products to eliminate competition. Dbest's conduct mirrors the actions of "patent trolls," who typically assert patents after the companies they target have independently invented or begun using a technology allegedly covered by a patent.

dbest's scheme remains unchanged: it targets small companies on Amazon, files infringement reports against them, causes the delisting of their products, and reaps all the resulting profits. For example, over the past 25 months, dbest has filed at least 20 separate Amazon patent infringement reports against at least 20 different small companies across the United States. In the seven months leading up to and during the critical holiday season—the most profitable time for Amazon sellers—dbest filed numerous baseless reports, showing no concern for their truth or outcome, with the aim of eliminating competition and capturing a larger share of container market sales. In fact, the patent asserted by dbest is invalid because of prior art and dbest's misrepresentations to the United States Patent Office. For instance, dbest misrepresented the nature

of U.S. Patent No. 12,103,576 ("'576 Patent") as a continuation rather than a continuation in-part, affecting the priority date and the validity of the patent. This misrepresentation was made to secure unwarranted rights. In short, dbest's conduct in asserting its patents only shows one thing—dbest's business is not centered around protecting its patents, but around proliferating its profits.

As such, Plaintiff, Sanders Collection Inc. ("Sanders"), by its attorneys, for its complaint against Defendant dbest products, Inc. ("dbest") alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for a Declaratory Judgment of no patent infringement under the U.S. Patent laws, 35 U.S.C. § 1 et seq. Specifically, Sanders seeks a Declaratory Judgment that its products do not infringe upon the '576 Patent, which has been asserted against Sanders by dbest to Amazon.com, Inc. ("Amazon"), and has caused Amazon to have delisted Sanders' products from its ecommerce platform. A true and correct copy of the '576 Patent is attached as **Exhibit 1**.

2.      Sanders also seeks a declaration that the '576 Patent is invalid based on prior art references and dbest's bad-faith misrepresentations to the United States Patent and Trademark Office ("USPTO") during prosecution. Specifically, dbest knew, or should have known, that it should have filed a continuation-in-part application rather than a continuation, because, as the prosecution history reveals, the "third right panel" constitutes new matter absent from all prior parent applications. dbest's violation of its duty of disclosure and candor to the USPTO constitutes bad-faith, egregious conduct recognized as inequitable conduct under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc). dbest's infringement report against Sanders on Amazon was both objectively and subjectively baseless because dbest knew, or should have known, that the '576 Patent was invalid.

3.      As a result of dbest's bad-faith infringement reports, Sanders asserts claims for tortious interference with contract and prospective economic relations under New York law. Sanders also asserts a related claim for unfair competition under a misappropriation theory.

4.      Because this action presents an actual controversy with respect to patent infringement, this Court may grant declaratory relief of non-infringement of '576 Patent" pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.      Plaintiff Sanders Collection Inc. is a corporation organized under the laws of New York, with its principal place of business at 10 Hilda Lane, Monsey, NY, United States 10952 (hereinafter referred to as "Sanders").

6.      Upon information and belief, Defendant dbest products, Inc. is organized and existing under the laws of the state of California, with its principal place of business at 16506 S. Avalon Blvd., Carson, California 90746 (hereinafter referred to as "dbest").

7.      Upon information and belief, Defendant is the Assignee of the '576 Patent.

## JURISDICTION AND VENUE

8.      This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). Further, the Court has subject matter jurisdiction over the remaining claims under 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. As discussed further below in paragraphs 8-15, an actual and justiciable controversy exists between Sanders and dbest as to non-infringement of the '576 Patent.

9.     In addition, this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1), in that it is a civil action between citizens of different States in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     An actual case or controversy exists giving Sanders standing under Article III of the United States Constitution to file this declaratory judgment action pursuant to 28 U.S.C. §§ 2201, 2202.

11.     Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400.

12.     Upon information and belief, this Court has personal jurisdiction over dbest because a substantial portion of the events or occurrences giving rise to the claims at issue herein arose within this judicial district, dbest availed itself of the privilege of exploiting Sanders' business in New York, and dbest's contacts in the State of New York. Dbest is maintaining a website accessible in the State of New York, marketing and selling products to customers in the State of New York and derives substantial revenue from interstate and intrastate commerce through dbest's Amazon website within this district, which caused injury in this district, and dbest is otherwise within the jurisdiction of this Court. Without limitation, dbest has caused its products, including its competing products, to be offered, sold, and shipped into this judicial district.

13.     In accordance with N.Y.C.P.L.R. § 301, this Court has general personal jurisdiction over dbest because it regularly solicits and conducts business in New York through sales on Amazon.com and other websites.

14.     In accordance with N.Y.C.P.L.R. § 302(3)(i), this Court has specific personal jurisdiction over dbest because dbest's wrongful conduct has intentionally caused harm to Sanders in this District.

## FACTS RELEVANT TO ALL CLAIMS

15.     Defendant dbest is an Amazon seller that seemingly transformed its business into that of a patent assertion entity (PAE) instead of investing in development or commercialization. Abusive PAEs, known as patent trolls, assert patents in bad faith, targeting smaller companies that cannot afford protracted litigation, in order to gain a competitive advantage in the marketplace. dbest chose Amazon.com to improperly enforce rights, as the internal process used by Amazon.com would effectively grant an injunction against sales, with a simple allegation (however baseless) of patent infringement by dbest.

16.     When a patent owner reports that an Amazon seller is selling allegedly infringing products, Amazon may immediately delist those products and the only option for the alleged infringer to reenlist those products is to demonstrate to Amazon that the allegedly infringing products do not infringe or to either (1) obtain a letter of authorization from the rights owner or (2) obtain a licensing agreement from the rights owner.

17.     But this process takes months, and, during that time, the seller's allegedly infringing products are delisted, without any determinations of actual infringement. More importantly, Amazon's program does not adjudicate the validity of patents, but presumes that every patent is valid and enforceable. Of course dbest knows all of this and has been taking advantage of this process since at least 2021. *See Guangzhou Yucheng Trading Co., Ltd. V. Dbest Products, Inc.*, No. 2:21-cv-4758 (C.D. Cal. Filed June 10, 2021). To date, dbest's bad faith patent assertion scheme is the same—target small companies on Amazon, file a baseless infringement report against them, have the small companies' products delisted for a couple months, and rein in all the profits.

18.     For example, over the past 25 months, dbest filed at least 20 separate Amazon patent infringement reports against at least 20 different small companies across the United States.

In just the last seven months—beginning shortly before the crucial holiday season—dbest repeatedly filed baseless reports with no regard for their truth or consequences, aiming to eliminate competition and capture a larger share of container market sales. In the past five months alone, dbest has been involved in at least 16 separate declaratory judgment actions arising from misleading Amazon infringement reports filed against 16 different Amazon sellers.

19.    Among the companies targeted by dbest was Sanders, a firm founded more than seventy (70) years ago. Since its inception, Sanders has been a leading importer and retailer of high-end home and hospitality goods, particularly textiles and bedding. Sanders also offers a wide range of consumer products, including home goods, kitchenware, and furniture. Today, Sanders sells thousands of distinct products to consumers across the United States.

20.    Sanders markets and sells its products directly through its website, www.sanderscollection.com, and indirectly through a third-party e-commerce portal on Amazon.com.

21.    Amazon's selling portal is critical to Sanders' business. Sanders has spent years developing its presence and building trust with Amazon and its consumers. Multiple intellectual property infringement allegations against a seller, such as Sanders, can result in the permanent suspension of the seller's account.

22.    On or about November 26, 2024, Sanders received a notice of an infringement report ("Notice") through its Amazon message portal. The Notice stated that Amazon had "received a report from a rights owner alleging that one or more of your listings may be infringing on the intellectual property rights of others." The product at the heart of this lawsuit, and dbest's report, is a stackable collapsible cart sold by Sanders and is attached as **Exhibit 2**. A true and correct copy of the Notice is attached as **Exhibit 3**.

23.    The    Notice    also    provided    dbest's    contact    information    as
kpereira@dbestproducts.net, for any correspondence with the owner of the '576 Patent.

24.    Specifically, the Notice indicated that the following ASINS that were delisted from
Amazon due to alleged infringement of the '576 Patent: B0CBMMY5H8, B0D5LXNDHP,
B0D5LZVLSY,    B0DGPX45P7,    B0BNHW6W4H,    B0CNSQGYXJ,    B0D7D64TJC,
B0DG55RL9H,    B0D7F86TPF,    B0D7FPL3RD,    B09TXW9NZN,    B0CBMKQ37R,
B0BNMMPZDL,    B0D7FCMLNR,    B0CN1CVJT2,    B0CQ4DT9J1,    B0D7FSGQJV,
B0DFD33SHV,    B0CSKSQDPV,    B0DFLTQCWW,    B0CBMLM355,    B0DKNLQZ4F,
B0DLZPL2Q3,    B0DLZL5TKW,    B0DFM47WXY,    B0DLZYDFWY,    B09QPFWJ1G,
B0CBMM3LLQ,    B0CN4C2JNF,    B0CBML467H,    B0DGD2TMV7,    B0D2VRFZL9,
B0DLZDVCHG,    B0DBL61RH3,    B0CN4BFVDF,    B0DLZSWJHN,    B0BCYSXSMB,
B0D7F96S2P, B0D7D2RDM9, B0CBMNTRCR, B0D7FC13HC (collectively, "Accused
Products").

25.    The Notice provides that if Sanders believes the account was deactivated in error,
Sanders should include an explanation of (1) how your account has not violated the Intellectual
Property policy and (2) Evidence that shows your account complies with our Intellectual Property
policy.  The Notice also provided Sanders two options for reactivating the Accused Products on
Amazon: (1) obtain a letter of authorization from the rights owner or (2) obtain a licensing
agreement from the rights owner.

26.    The '576 Patent is titled "Stackable Collapsible Carts." The '576 Patent issued on
Oct. 1, 2024 to named inventor Richard Elden. The face of the '576 Patent states that the assignee
is dbest products, Inc.

27.    dbest acted in bad faith by failing to conduct a reasonable pre-suit investigation before asserting infringement of the '576 Patent. Rather than analyzing whether its patent claims were actually infringed, dbest broadly asserted its patent against Sanders' containers—and virtually any other container offered for sale on Amazon—without regard to the products' features. The volume of litigation filed by dbest underscores this reckless approach. Patent holders must evaluate the merits of their infringement claims before asserting them, and they must typically offer alleged infringers an opportunity to respond before pursuing takedowns. Dbest did neither. Instead of notifying Sanders or any seller directly, dbest submitted a complaint to Amazon, thereby misleading the platform into delisting Sanders' products without proper investigation. Dbest also knew that submitting a report through Amazon's infringement reporting system would automatically trigger delisting, and it used this knowledge to improperly pressure Sanders and other sellers without a valid basis.

28.    dbest's assertion of infringement was baseless and brought in bad faith. A central reason is that each independent claim of the '576 Patent includes a locking mechanism, which the Accused Products do not have. The presence of this limitation in every independent claim makes it material to the patent's scope. In place of a locking mechanism, Sanders' containers use magnets to secure cabinet doors. The absence of this essential element precludes infringement as a matter of law. Even the omission of a single claim element defeats infringement. dbest's failure to recognize this fundamental discrepancy shows that it did not properly analyze its infringement position and instead acted with reckless disregard for the truth. This conduct further demonstrates its bad-faith intent in making false and unsupported allegations to Amazon.

29.    dbest's actions have significantly harmed plaintiff's business operations by substantially reducing product rankings on Amazon, which directly impacts Sanders' product

reviews, ratings, Amazon ranking, which results in lower product visibility in consumer searches and diminishes market presence.

30.    The reduced rankings and visibility have caused substantial losses in sales and profits. In addition, they have led to increased warehousing and inventory holding costs due to reduced product turnover.

31.    On December 4, 2024, Sanders' counsel sent a letter to Amazon asserting that Sanders' "[Accused Products] do not infringe on the '576 patent and the [Accused Products] should be reinstated."

32.    On December 11, 2024, Sanders' counsel sent a letter by email to kpereira@dbestproducts.net in response to the Notice. A true and correct copy of the December 11, 2024 letter is attached as Exhibit 4. In the letter, Sanders' counsel stated that "our Client's products do not infringe U.S. Patent No. 12,103,576, and we require the immediate retraction of the Amazon complaint." The letter further states that:

- Sanders' Accused Products cannot infringe claim 1 of the '576 Patent because the Accused Products do not have a locking mechanism to "lock the first right panel to the second right panel" or "contain a first track that extends from a first position on the first right panel to a second position on the second right panel or a first slideable member," as stated in claim 1. Rather, Sanders' Accused Products "contain a magnetic closure system" that is "in stark contrast to the sliding mechanism shown in the '576 Patent.

- Sanders' Accused Products cannot infringe claim 11 of the '576 Patent because the Accused Products do not contain a lock assembly nor a right sidewell with a third right panel, wherein the second right panel and the third right panel

conform in shape to collectively cover the opening in the first right panel, as required by claim 11. The Accused Products only contain magnets "that allow for the closing or opening of the [Accused Products]."

- Sanders' Accused Products cannot infringe claim 15 of the '576 Patent because the Accused Products contain no lock assembly, whereas claim 15 requires "a lock assembly integrated with the first and second right panels…."

In addition, the December 11, 2024 letter states that Sanders reserves all rights, including to seek its fees and costs, "for having to bring an action in view of dbest's failure to properly conduct an adequate infringement analysis and its pursuit of meritless infringement complaints sent to Amazon that severely prejudiced our Client."

33.    In response to the December 11, 2024 letter, on December 17, 2024, kpereira@dbestproducts.net responded stating "We acknowledge the receipt of your email. We are currently analyzing it and will get back to you as soon as possible. Thanks." This response left the issue unresolved, maintained the pressure and apprehension of being sued on Sanders, and kept Sanders' products delisted from Amazon.

34.    dbest, through its outside counsel, continued to hold Sanders in a state of uncertainty. In addition, dbest has previously asserted the '576 Patent against various companies, including but not limited to iBeauty Limited Company, Taizhou Luqiao Shengqiang Housewares Factory, and Shenzhen Yihong Technology Co., Ltd., all within the past year.

35.    dbest has a history of bad faith behavior, such as willfully exploiting covenant's not to sue with potential counterparties to manipulate venue selection, forcing those counterparties to the agreed-upon location in the covenant. This tactic disadvantages counterparties and is a deliberate scheme by dbest to secure favorable venue in declaratory judgment cases. *See*

*ECR4Kids, L.P. v. dbest Products, Inc.*, No. 2:24-cv-04523-MCS-AJR, 2024 U.S. Dist. LEXIS 162858, at \*1 (C.D. Cal. Sep. 10, 2024) (formerly 2024 U.S. Dist. LEXIS 207315, 2024 WL 4751608 (D.N.J., May 23, 2024).

36.    A declaratory judgment will serve a useful purpose by clarifying and settling the legal issues involved, finalizing the controversy, and offering relief from uncertainty. It will also allow the Court to turn to matters more deserving of its attention.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment of Non-Infringement of the '576 Patent)

37.    Sanders restates and realleges each of the assertions set forth in the paragraphs above.

38.    Sanders has not infringed and does not infringe any claim of the '576 Patent, directly or indirectly, either literally or under the doctrine of equivalents.

39.    For example, and without limitation, claims 1, 11, and 15 of the '576 Patent require a locking mechanism on the first and second right panels. As claim 1 reads:

> … a first slideable member cooperatively engaged to the first track, the first slideable member is movable along the first track between an open position to a closed position **to selectively lock the first right panel to the second right panel**, wherein the first slideable member is in the open position when disposed along the first track adjacent the first position of the first track while not disposed along the second right panel and is in the closed position when disposed along the first track adjacent the second position of the first track while being disposed across both the first right panel and second right panel.

Claim 1 (emphasis added). In addition, claims 11 and 15 require "**a first lock assembly** integrated with the first right panel and the second right panel, **the first lock assembly** having a first condition for **locking the first right panel to the second right panel**, and a second condition for **unlocking the first right panel from the second right panel**." Claims 11 and 15 (emphasis added).

40.     Sanders does not practice this limitation because the Accused Products lack "a first lock assembly integrated with the first right panel and the second right panel, the first lock assembly having a first condition for locking the first right panel to the second right panel, and a second condition for unlocking the first right panel from the second right panel," as defined in the specification of the '576 Patent. Sanders' Accused Products have no lock assembly at all, as illustrated in Comparison Chart 2 below.

**Comparison Chart 2**



| The '576 Patent | Accused Products |
|---|---|

41.     In addition, for example, and without limitation, claim 1 of the '576 Patent requires: "a first track formed along the first right panel and the second right panel extending from a first position on the first right panel to a second position on the second right panel; and a first slideable member cooperatively engaged to the first track...." Sanders does not practice this limitation

because the Accused Products do not have "a first track formed along the first right panel and the second right panel extending from a first position on the first right panel to a second position on the second right panel; and a first slideable member cooperatively engaged to the first track" as defined in the specification of the '576 Patent. Sanders' Accused Products all have magnetic closure systems that are in stark contrast to the sliding mechanism shown in the '576 Patent. This is further shown by **Comparison Chart 2**, below.

**Comparison Chart 2**



42.    Accordingly, the substantial differences outlined above hold true under both the literal interpretation and the doctrine of equivalents.  Thus, Sanders' Accused Products do not infringe claims 11 and 15.

43.    Furthermore, Sanders' Accused Products—whether as single units or stacked structures—neither possess, are designed to incorporate, nor require any configuration that permits the right and left sidewalls to fold inward in a closed condition. This limitation arises from the products' entirely rigid construction. Even when stacked, the resulting assembly remains incapable of performing any folding action. Accordingly, the Accused Products cannot meet the limitation in claims 11 and 15 requiring "the right sidewall and the left sidewall [to be] configured to fold inwardly in the closed condition."

44.    Based on the discussion above, the substantial differences outlined herein hold true under both a literal interpretation and the doctrine of equivalents. Therefore, Sanders' Accused Products do not infringe claims 1, 11, or 15.

45.    Because the independent Claims 1, 11, and 15 are not infringed, neither are the remaining fifteen (15) dependent claims. *Ferring B.V. v. Watson Labs., Inc.-Florida*, 764 F.3d 1401, 1411 (Fed. Cir. 2014) (finding that "If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon.")

46.    There is an actual controversy, within the meaning of 28 U.S.C. § 2201 and § 2202, between Sanders and dbest concerning the non-infringement of the '576 Patent.  dbest's baseless infringement report on Amazon.com along with dbest's recent litigation history caused an imminent and real threat of an infringement lawsuit.  In addition, Sanders has incurred substantial losses, both financial and in terms of goodwill.

47.     Sanders is entitled to a declaratory judgment that it has not infringed the '576 Patent, directly or indirectly, either literally or under the doctrine of equivalents. Sanders is also entitled to recover damages caused by dbest's wrongful conduct.

48.     By reason of the foregoing, Sanders is suffering, and will continue to suffer, irreparable harm from dbest's actions unless a declaratory judgment is issued confirming that Sanders does not infringe the '576 Patent.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment of Invalidity of One or More Claims of the '576 Patent)

49.     Sanders restates and realleges each of the assertions set forth in the paragraphs above.

50.     An actual and justiciable controversy exists between Sanders and dbest concerning the validity of the '576 Patent, as shown by dbest's allegations of infringement on Amazon, as set forth above.

51.     A patent is invalid or unenforceable when: (i) the disclosed invention is anticipated and/or obvious in light of earlier prior art; (ii) its claims are indefinite, lack sufficient written description, or fail to properly enable the claimed invention; (iii) an inventor, an inventor's attorney, or another person involved with the application, with intent to mislead or deceive the PTO, fails to disclose material information known to that person to be material, or submits materially false information to the PTO during prosecution; and/or (iv) when a later acquired patent is not patentably distinct from the invention claimed in an earlier patent (and no exception, such as the safe harbor, applies) (referred to as "double patenting").

52.     The claims of the '576 Patent are invalid for failure to meet the conditions of patentability or otherwise comply with one or more of the provisions of U.S. Patent law, including,

but not limited to, 35 U.S.C. §§ 101, 102, 103, or 112, at least in view of the prior art cited herein as well as any additional prior art that may come to light during this litigation.

53.     By way of example and not limitation, at least the Chinese Patent Publication No. CN112918890A, entitled "A storage module" to Song ("Song"), by itself or in combination with other prior art, anticipates and/or renders obvious claims 1-18 of the '576 Patent. Song was filed on February 1, 2021, and was published on June 8, 2021. A copy of Song is attached hereto as **Exhibit 5**.

54.     In addition to the Song and by way of further example and not limitation, U.S. Patent Publication No. 2002/0171228 in combination with Song anticipates and/or renders obvious claims 1 through 18 of the '576 Patent. U.S. Patent Publication No. 2002/0171228 is entitled "Accessories for a collapsible rolling caddy" to Darren ("Darren"). Darren was filed on July 03, 2002, and published on November 21, 2002. A copy of Darren is attached hereto as **Exhibit 6**.

55.     All the claims of the '576 Patent are anticipated and/or rendered obvious by the prior art listed above or their combinations. In addition, the claims, read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

56.     On another note, certain activities taking place during the prosecution of an application may render a patent invalid. The patent examination process is ex parte, meaning that the patent examiner engages in a dialogue with the applicant. The public, third parties, and even researchers in the same field are not a part of the patent examination process. As a result, the patent process is not an adversarial proceeding, and it lacks the safeguard adverse parties pushing to present more facts to the examiner.

57.    Because the proceedings are ex parte, the PTO must receive all information from the applicant, and the applicant has a duty of candor and good faith in dealing with the PTO. As stated in the Manual of Patent Examining Procedure, "Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section."17 Deceiving the PTO, engaging in inequitable conduct, including misleading the examiner or giving inaccurate statements during the prosecution, or violating the duty of disclosure renders the patent invalid.

58.    For all documents submitted to the PTO, the applicant, "whether a practitioner or non-practitioner," must certify that all statements from "the party's own knowledge" or "on information and belief" are true. 37 C.F.R. § 11.18(a)-(b) (2021). Additionally, the applicant must acknowledge that any statements made that "knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or knowingly and willfully makes any false, fictitious, or fraudulent statements or representations" will subject the applicant to penalties, including criminal penalties and "jeopardiz[ing] the probative value" of the filing. 37 C.F.R. § 11.18(b) (2021).

59.    The PTO's decision to issue a patent does not substitute for a fact-specific assessment of (i) whether the applicant made intentional misrepresentations or omissions on which the PTO relied in issuing the patent, and (ii) whether a reasonable manufacturer in the patent holder's position would have a realistic likelihood of succeeding on the merits of a patent infringement suit.

60.    Furthermore, the prosecution history of the '576 Patent (Application No. 18/542,495) shows it was incorrectly designated as a continuation of parent application No.

18/161,677, filed on January 30, 2023. The '576 Patent introduced new matter, the "third right panel," absent from prior applications, making it a continuation-in-part. dbest misrepresented this to the USPTO, knowing it affected the priority date. The correct earliest filing date is December 15, 2023, not January 6, 2020. dbest's misrepresentation violated its duty of disclosure, intending to deceive the USPTO and assert the patent in bad faith against Sanders. This conduct led to baseless claims against Sanders, aiming to improperly interfere with a competitor.

61. Further, on information and belief, the '576 Patent is unenforceable by reason of inequitable conduct committed by at least Richard Elden, during the prosecution of the '576 Patent before the USPTO by the deliberate withholding of information, including information regarding the status and prosecution of co-pending applications in related patents, from the USPTO and information regarding withholding of new matter absent from prior-related applications. Because the full scope of such inequitable conduct is not now known in its entirety or with precision, Sanders reserves all right to conduct discovery with regard to the conduct of Richard Elden, other attorneys and agents who had a duty to disclose prior art and other material information, the named inventors of the '576 Patent, and dbest or its agents and assigns. Sanders reserves all rights to amend its pleading to conform to the facts uncovered during discovery.

62. Defendant's baseless infringement reports on the Amazon platform have caused imminent and real threat of an infringement lawsuit. Plaintiff has also suffered significant damages because its listings were removed by Amazon.

63. A substantial, immediate, and real controversy exists between Plaintiff and Defendant regarding the validity of the '576 Patent.

64. Sanders seeks a declaratory judgment that the claims of the '576 Patent are invalid for failure to meet the conditions of patentability or otherwise comply with one or more of the

provisions of U.S. Patent law, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 or 116.

65.    To the extent that dbest has failed to comply with the provisions of 35 U.S.C. § 287, any claim for damages for patent infringement by dbest is limited by 35 U.S.C. § 287 to those damages occurring after legally proper notice of alleged infringement. To the extent that any claim of the asserted patents is held invalid, dbest is precluded under 35 U.S.C. § 288 from recovering costs relating to this action.

66.    Sanders is entitled to recover all damages proximately caused by dbest's wrongful conduct. Dbest's bad-faith assertions of patent infringement, made without a reasonable basis and with reckless disregard for the truth, directly caused substantial harm to Sanders. These damages include, but are not limited to, lost sales, harm to business relationships, injury to reputation, costs incurred in responding to dbest's baseless claims, and attorneys' fees. Under applicable law, Sanders is entitled to full compensation for all economic and reputational losses resulting from dbest's misconduct.

## THIRD CLAIM FOR RELIEF
### (Tortious Interference with Prospective Economic Relations with Amazon Customers)

67.    Sanders restates and realleges each of the assertions set forth in the paragraphs above.

68.    Sanders maintained economic relationships with Amazon and end-user consumers regarding the sale of the Accused Products. These relationships provided Sanders with a strong probability of future economic benefits through continued and increased sales of the Accused Products.

69.    dbest was aware of these relationships, as evidenced by its deliberate acts to disrupt them. In particular, dbest reported to Amazon that Sanders infringed the '576 Patent, with the

specific intent of causing Amazon to terminate Sanders' listings for the Accused Products. dbest filed the infringement report in bad faith, with malice, oppression, and fraud, despite knowing or having reason to know that the '576 Patent was invalid due to material misrepresentations made during prosecution. Specifically, dbest knew or should have known that the '576 Patent was properly a continuation-in-part, not a continuation, of parent application No. 18/161,677, and that the correct earliest effective filing date was December 15, 2023, not January 6, 2020.

70.     Further, dbest acted in bad faith by refusing to withdraw its complaint notice after being shown that the Accused Products do not contain the material limitations disclosed in the '576 Patent.

71.     dbest's bad-faith infringement report to Amazon wrongfully prevented Sanders from continuing its business relationships with Amazon customers. The report disrupted Sanders' relationship with Amazon and caused a loss of existing and prospective customers, particularly during the critical holiday season. For example, Amazon sellers are ranked based on sales volume, customer interactions, review volume, and product search frequency, specifically for products like the container at issue here. Because Amazon delisted Sanders' products, Sanders was deprived of the opportunity to reach and acquire new customers in the future.

72.     Sanders' relationship with Amazon will likely take years to recover because of dbest's bad-faith reports of baseless infringement, which caused a decline in Sanders' Amazon Seller rankings and an overall loss of customers. See *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-cv-9321 (JGK), 2023 U.S. Dist. LEXIS 26905, at *27–28 (S.D.N.Y. Feb. 16, 2023) (holding that Amazon's misrepresentations interfered with GateGuard's customer relationships, resulting in the cancellation of contracts and loss of future business).

73.     dbest's actions have significantly harmed Sanders' business operations by substantially reducing its product rankings on Amazon. This reduction directly impacted Sanders' product reviews, ratings, and overall Amazon ranking, resulting in lower visibility in consumer searches and diminished market presence.

74.     The reduced rankings and visibility have caused Sanders substantial losses in sales and profits. They have also led to increased warehousing and inventory holding costs due to reduced product turnover.

75.     These damages extend beyond lost revenue, causing harm to Sanders' goodwill and brand reputation, both of which are essential to maintaining competitive standing in the market. The exact amount of these damages will be proven at trial and cannot be fully measured or compensated in economic terms alone.

76.     Furthermore, dbest's written notices of infringement to Amazon may lead to the complete suspension of Sanders' Amazon seller account.

77.     dbest's conduct caused actual economic harm to Sanders, including lost sales of the Accused Products formerly listed on Amazon.

78.     Accordingly, dbest has engaged in tortious interference with Sanders' prospective economic relations with Amazon customers.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with Contract)

79.    Sanders restates and realleges each of the assertions set forth in the paragraphs above.

80.    Sanders had a valid contract with Amazon to sell the Accused Products through its Amazon storefront. dbest was aware of this contractual relationship because it also sells products on Amazon and operates under the same type of contract.

81.    Thus, dbest knew or should have known of Sanders' contractual relationship with Amazon because it had a similar contract as an Amazon seller and directed its false infringement report against Sanders' storefront.

82.    dbest intentionally procured Amazon's breach of its contract with Sanders by filing a false and misleading infringement report, resulting in the delisting of Sanders' products. dbest made the report in bad faith, knowing or having reason to know that the '576 Patent was invalid because it had made material misrepresentations to the USPTO during prosecution. Specifically, dbest knew or should have known that the '576 Patent was a continuation-in-part, not a continuation, of parent application No. 18/161,677, and that its correct earliest effective filing date was December 15, 2023, not January 6, 2020.

83.    As a result, Amazon breached its contract with Sanders by terminating Sanders' product listings after receiving dbest's bad-faith report of patent infringement.

84.    Thus, dbest engaged in tortious interference with contract under New York Law.

## FIFTH CLAIM FOR RELIEF
### (Unfair Competition Through Misappropriation of Sanders' Commercial Goodwill)

85.    Sanders restates and realleges each of the assertions set forth in the paragraphs above.

86.    Sanders sells the Accused Products on the Amazon marketplace to end-user

consumers. As Sanders' Amazon seller ranking improves, its sales volume increases, allowing it to reach more customers over time and further strengthen its seller reputation.

87.    dbest knowingly, in bad faith, and unfairly filed a report with Amazon alleging that Sanders infringed the '576 Patent. As a result, Amazon delisted Sanders' Accused Products during the holiday season, allowing dbest to capture a greater share of the customer base. dbest further benefited by paying less per click for the same advertising keywords, thereby increasing its visibility and sales.

88.    On Amazon, sellers bid on keywords to promote their products. When two sellers compete for the same keywords—such as "container"—the removal of one boosts the visibility of the other. By causing Sanders' delisting, dbest eliminated its competitor in the container market and monopolized keyword-driven traffic. This tactic misappropriated Sanders' marketing expenditures, allowing dbest to "reap where it has not sown" and to claim "the harvest of those who have sown... precisely at the point where the profit is to be reaped," during the critical holiday season—conduct condemned in *International News Service v. Associated Press*, 248 U.S. 215, 239–40 (1918).

89.    dbest's infringement report to Amazon was knowingly false and unfairly made in bad faith to eliminate Sanders' products and gain an improper market advantage. dbest misappropriated the fruits of Sanders' labor for its own benefit. In other words, dbest reaped where it had not sown, capturing sales precisely at the point where profit was highest—during the holiday season, when sales peak for e-commerce retailers, particularly Sanders. dbest further damaged Sanders' goodwill on Amazon while promoting its own, as customers searching for Sanders' products found them delisted.

90.     dbest's actions led to an unjust commercial advantage through increased Amazon rankings and decreased pay-per-click advertising costs. These benefits rightfully belong to Sanders, not dbest.

91.     In addition, the reduced rankings and visibility caused Sanders substantial losses in sales and profits, as well as increased warehousing and inventory holding costs due to reduced product turnover.

92.     These damages extend beyond lost revenue, causing harm to Sanders' goodwill and brand reputation, both of which are essential to maintaining competitive standing in the market. The exact amount of these damages will be proven at trial and cannot be fully measured or compensated in economic terms alone.

93.     As a result of dbest's misappropriation, Sanders has lost, and continues to lose, profits, and has suffered ongoing harm to its business reputation and goodwill.

## PRAYER FOR RELIEF

Sanders Collection Inc. respectfully requests the following relief:

(a)     That the Court enter a judgment declaring that Sanders has not infringed and does not infringe any claim of the '576 patent, directly or indirectly, either literally or under the doctrine of equivalents;

(b)     That the Court enter a judgment declaring that the '576 Patent is invalid;

(c)     That the Court enter a judgment that dbest has tortiously interfered with Sanders' prospective business relations with Amazon customers and with the contract Sanders has with Amazon.com;

(d)     That the Court enter a judgment that dbest has competed unfairly with Sanders;

(e)     That the Court enter a judgment that this is an exceptional case under 35 U.S.C. § 285 and award Sanders its costs, expenses, and reasonable attorneys' fees incurred in this action;

(f)     That the Court award Sanders any and all other relief to which Sanders may show itself to be entitled; and

(g)     That the Court award Sanders any other relief it may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Sanders Collection Inc. respectfully requests a trial by jury as to all issues triable to a jury.

Dated: April 25, 2025
New York, NY

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**

By: ____/s/Michael Steinmetz_____
Michael Steinmetz (MS3164)
164 West 25th Street, 11th Floor
New York, NY 10001
Tel: (212) 380-3623
Email: ms@gs2law.com

*Attorneys for Plaintiff*